**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Anthony Adams, Individually and on Behalf of All Others Similarly Situated, | CASE NO. |
| Plaintiffs, | |
| v. | **COMPLAINT—CLASS ACTION AND DEMAND FOR JURY TRIAL** |
| AMAZON.COM, Inc. and AMAZON.COM SERVICES, Inc. | |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Anthony Adams ("Adams") brings this Class Action Complaint against Defendants Amazon.com, Inc. and Amazon.com Services, Inc. (together, "Amazon") for damages and to put a stop to their surreptitious collection, use, storage, and disclosure of Plaintiff's and the proposed Class's sensitive biometric data in violation of Illinois' Biometric Information Privacy Act. The Class includes Amazon Alexa users whose rights were wronged pursuant to violations of the Illinois Biometric Information Privacy Act. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information, belief, and research into Amazon's platform and patents, which includes investigation conducted by his attorneys.

## I.    NATURE OF THE ACTION

1.    Amazon is a world leader in e-commerce, cloud computing, digital streaming, and artificial intelligence. Indeed, it ranks among the Big Five companies in the U.S. information technology industry.[1,2]

2.    Amazon is one of the largest companies in the world, with net sales of over $386 billion in 2020.[3]  As an e-commerce company, Amazon's main sources of revenue are retail sales, third-party seller services, subscription services, and Amazon Web Services ("AWS") arrangements that include "global sales of compute, storage, database and other services."[4] According to some reports, an astounding 42% of the internet is powered by AWS, more than double that of Microsoft, Google, and IBM combined.[5]

3.    Amazon also develops certain technology products, including Alexa, Amazon's "cloud-based voice service available on hundreds of millions of devices from Amazon and third-party device manufacturers."[6] Amazon further describes Alexa as its "voice AI," which "lives in the cloud and is happy to help anywhere there's internet access and a device that can connect to Alexa."[7] Alexa "listens" to verbal communications and responds to those communications in a simulated voice.

---

[1] FANG Stocks News & Quotes: Facebook, Amazon, Netflix, Google, https://www.investors.com/news/technology/fang-stocks-news-quotes-facebook-amazon-netflix-google/ (last viewed on Sept. 3, 2021).
[2] 'Big Tech' isn't one big monopoly – it's 5 companies all in different businesses, https://www.investors.com/news/technology/fang-stocks-news-quotes-facebook-amazon-netflix-google/ (last viewed on Sept. 3, 2021).
[3] Form 10-K for Fiscal Year Ended December 31, 2020, Amazon Inc., accessible at https://ir.aboutamazon.com/sec-filings/default.aspx (last viewed on the date of this Complaint).
[4] *Id.*
[5] Matt Ward, *Amazon: The Company Consuming Consumers*, thinkgrowth.org (Jan. 29, 2018), https://thinkgrowth.org/the-big-4-part-one-amazon-the-company-that-consumes-the-world-fb4679f10708.
[6] Amazon, *What is Alexa*, https://developer.amazon.com/en-US/alexa (last viewed Sept. 8, 2021).
[7] Amazon, *FAQs: What is Alexa?*, https://www.amazon.com/b?ie=UTF8&node=21576558011 (last viewed Sept. 8, 2021).

4.      The inception of Alexa began with Amazon Lab126 designing and engineering the Echo "smart speaker" in 2010, which led to Amazon launching the Echo "smart speaker" product in conjunction with the Alexa voice assistant in November 2014.

5.      Amazon's use of the Alexa smart-speaker technology is not limited to one line of devices, but now encompasses a range of Amazon products including Echo Dot, Echo Plus, Echo Sub, Echo Show, Echo Input, Echo Frames eyeglasses, Amazon Fire TV digital media player, and Amazon Fire tablets.  Additionally, Amazon allows third-party manufacturers of devices, such as residential thermostats, computers, and security cameras, to offer Alexa integration, and also allows third-party manufacturers to offer devices with Alexa capability already built-in (collectively, "Alexa Devices" or "Alexa Device").  As of January 2019, Amazon has reported that over 100 million devices with Amazon's Alexa assistant pre-installed have been sold.[8]

6.      In order to use an Alexa Device, a person needs an Internet connection and the Alexa mobile application (the "Alexa App") installed on a smartphone or tablet.

7.      To first use the Alexa App, an individual must have an account with Amazon. The individual must then follow the set-up process on the Alexa Device, which indicates that one must pair the Alexa Device with the Alexa App. After the person has paired the Alexa Device to the Alexa App, the Alexa Device is ready for use by anyone, including people who do not have an account with Amazon, have not set up the Alexa Device, or do not have an Alexa App.

8.      Unbeknownst to users, Amazon uses voice recognition technology to surreptitiously extract, collect, and store voiceprints of its users to identify them.  Amazon then stores the biometric information of users in its database.  Amazon does not disclose its biometric

---

[8] Lucase Matney, *More Than 100 Million Alexa Devices Have Been Sold,* TECH CRUNCH (Jan. 4, 2019), https://techcrunch.com/2019/01/04/more-than-100-million-alexa-devices-have-been-sold/.

data collection to its users, nor does it ask users to acknowledge, let alone consent to, these practices.

9.     Worse, instead of disclosing its practice of collecting biometric identifiers in the form of voiceprints, Amazon deceives users by telling them that what Amazon collects is a voice input, without explaining the underlying technology and that it collects the users' biometric data. *See* Amazon Services Terms of Use (Amazon "we process your ***voice input*** and other information (such as location) in the cloud to respond to your requests and to improve your experience and our services.").[9]  *See also* Amazon.com Privacy Notice ("we use your ***voice input***, images, videos, and other personal information to respond to your requests, provide the requested service to you, and improve our services.")[10]

10.     The Alexa Terms of Use mirror the same disingenuous wordsmithing: "You control Alexa with your voice. Alexa records and sends audio to the cloud when you interact with Alexa. Amazon processes and retains your Alexa Interactions, such as your ***voice inputs***, music playlists, and your Alexa to-do and shopping lists, in the cloud to provide, personalize, and improve our services."[11]

11.     Through these practices, Amazon not only disregards the users' privacy rights; it also violates the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), which was specifically designed to protect Illinois residents from practices like Amazon's.  In particular, Amazon violated (and continues to violate) BIPA because it does not:

- Properly inform Plaintiff or the Class in writing that their biometric identifiers (voiceprints) were being generated, collected or stored;

---

[9] Amazon Services Terms of Use, accessible at Amazon.com Help: Amazon Services Terms of Use, (last viewed on the date of this Complaint).
[10] Amazon.com Privacy Notice, accessible at Amazon.com Help: Amazon.com Privacy Notice, (last viewed on the date of this Complaint).
[11] Alexa Terms of Use, accessible at Amazon.com Help: Alexa Terms of Use, (last viewed on the date of this Complaint).

- Properly inform Plaintiff or the Class in writing of the specific purpose and length of time for which their biometric identifiers were being collected, stored, and used;

- Provide and follow a publicly available retention schedule and guidelines for permanently destroying the biometric identifiers of Plaintiff and the Class; and

- Receive a written release from Plaintiff or the Class to collect, capture, or otherwise obtain their biometric identifiers.

12. Accordingly, this Complaint seeks an order (i) declaring that Amazon's conduct violates BIPA; and (ii) awarding statutory damages to Plaintiff and the proposed Class.

## II.    PARTIES

11. Plaintiff Anthony Adams is a natural person and a citizen of Illinois. He lives in Cook County, Illinois.

12. Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

13. Defendant Amazon.com Services, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington. Amazon.com, Inc. and Amazon.com Services, Inc. conduct business throughout the State of Illinois and the United States.

## III.    JURISDICTION AND VENUE

14. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because (i) the proposed Class consists of well over 100 members; (ii) Plaintiff and all Class Members are United States citizens and Plaintiff is a citizen of a state different from Defendant's states of organization principal place of business; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15. This Court has personal jurisdiction over Defendants because each of them regularly conducts business in Illinois and a substantial part of the harm, events, and conduct giving rise to Plaintiff's claims occurred in Illinois.

16. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events and conduct giving rise to Plaintiff's claims took place in this District.

## IV. THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

17. BIPA was enacted in 2008. Under BIPA, companies may not:

> collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first:
>
> (1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier.
>
> 740 ILCS 14/15(b).

18. The statute defines "biometric identifier" to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

19. The statute defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

20. BIPA also regulates how companies must handle Illinois consumers' biometric data. *See*, *e.g.*, 740 ILCS 14/15(c)–(d). For instance, BIPA prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data, 740 ILCS 14/15(c), and requires that companies develop a publicly available written policy establishing a retention schedule and

guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first.    It also requires companies to comply with the established retention schedule and destruction guidelines.  740 ILCS 14/15(a).

21.    Under BIPA, "[a] prevailing party may recover for each violation: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id*. (emphasis added).

## V.    AMAZON VIOLATES THE PRIVACY OF ILLINOIS RESIDENTS

22.    Alexa Devices are designed to record and respond to communications immediately after an individual says a wake word (usually "Alexa" or "Echo").[12]  If the wake word is recognized, the Alexa Device records the ensuing communication and then transmits the recording to Amazon's servers for interpretation and processing before receiving the relevant data in response.

23.    However, oftentimes, the Alexa Device will record, monitor, or intercept communications even without the intentional use of a wake word. Indeed, reports have stated that it is extremely common for Alexa to activate, begin recording, and then upload the eavesdropped

---

[12] Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa,* BLOOMBERG (Apr. 10, 2019), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio.

audio to the cloud, even when no wake word was used.[13]  According to a report by Bloomberg, there are at least 100 transcripts of conversations uploaded to the cloud *each day* that Alexa Devices have recorded without purposely being activated.[14]

24.     From these recordings and transcripts, Amazon uses voice recognition technology to generate, collect, and store voiceprints of its users (and non-users).  Once in its system, Amazon can compare a voiceprint to voiceprints within its database to confirm the identity of the user.[15]

25.     The Alexa Voice Service utilizes Automatic Speech Recognition technology (ASR), whereby computers detect patterns in audio waveforms of the voiceprint, match them with the sounds in a given language, and ultimately identify the words spoken.[16] This is the first step required for Alexa to respond to a request.

26.     The ASR technology analyzes various features of the user's voiceprint, such as the micro pauses the speaker takes between words, the frequency, and the speaker's pitch, in order to convert the voiceprint into a transcribed text string.[17]

---

[13] Carley Lerner, *Is Alexa Really Always Listening*, READER'S DIGEST (May 28, 2021), https://www.rd.com/article/is-alexa-really-always-listening/.

[14] *Id.*; Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa*, BLOOMBERG (Apr. 10, 2019), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio.

[15] United States Patent, 10,762,896, https://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=31&f=G&l=50&d=PTXT&p=1&S1=((amazon.ASNM.+AND+%22voice+recognition%22)+AND+alexa)&OS=AN/amazon+AND+%22voice+recognition%22+AND+alexa&RS=((AN/amazon+AND+%22voice+recognition%22)+AND+alexa) (last viewed on Sept. 8, 2021)

[16] What Is Automatic Speech Recognition? Amazon.com, https://developer.amazon.com/en-US/alexa/alexa-skills-kit/asr (last viewed on Sept. 8, 2021)

[17] See Joseph Frankel, How Does My Voice Assistant Know What I'm Saying?  The Intelligencer (last viewed on Sept. 8, 2021), https://nymag.com/intelligencer/smarthome/make-me-smarter-voice-speech-recognition-alexa-siri-cortana-google.html;  Josh Hendrickson, Alexa, Siri, and Google Don't Understand a Word You Say (last viewed on Sept. 8, 2021) https://www.howtogeek.com/405011/voice-assistants-dont-really-understand-you/; Alexandre Gonfalonieri, How Amazon Alexa works? Your guide to Natural Language Processing (AI) (last viewed on Sept. 8, 2021), https://towardsdatascience.com/how-amazon-alexa-works-your-guide-to-natural-language-processing-ai-7506004709d3.

27.     After the ASR analyzes and transcribes the voiceprint, the Alexa Voice Service interprets the text using Natural Language Understanding ("NLU"), a process that allows Alexa to deduce what a speaker intends, rather than just the words they say.[18]

28.     According to Amazon, NLU works by using prior users' input: "With NLU, Alexa devices like Amazon Echo can apply learnings from historical interactions, across thousands of diverse applications, to understand that 'is it raining outside' and 'is it going to rain' are essentially the same question."[19]

29.     After the NLU has determined what the user wants, the Alexa Voice Service compares the transcribed communication to expected commands and, if it finds a match, it follows a set of instructions to retrieve the appropriate information from a designated data source to provide a response to the user in the form of a simple speech markup language ("SSML") which informs Alexa how to respond.

30.     If the NLU does not find a match, it looks for an alternative of what to do based on what information it has.

31.     Alexa's response system then takes the SSML that was produced, uses a text-to-speech ("TTS") system to generate an audio speech file, and streams the audio to the user's device.

32.     After Alexa has responded to a user's request, Amazon ***does not delete*** the voiceprint or the transcription created by that request.  Instead, Amazon captures, collects, and indefinitely retains the voiceprint on its servers for continued use and analysis to, inter alia, improve its speech and voice recognition capabilities.

---

[18] What Is Natural Language Understanding (NLU)? Amazon.com, https://developer.amazon.com/en-US/alexa/alexa-skills-kit/nlu (last viewed Sept. 8, 2021).
[19] *Id.*

33.     All voiceprints from the Amazon customer are associated with the customer's Amazon account.  This means that, in addition to it being associated with a user, the voiceprint is stored along with the user's order and search history, giving Amazon the capability to utilize these voice recordings to create targeted advertisements, as seen in their patents.

34.     Indeed, Amazon filed a "Keyword Determinations From Conversational Data" patent on June 12, 2017, which was approved and published by the United States Patent and Trademark Office on August 6, 2019.[20]  In it, Amazon demonstrates that it has the capability to utilize voice recordings to effectuate targeted advertisements based off the content of voice recordings:

a.     "FIG. 5 illustrates an example interface including advertising and shopping suggestions using keywords obtained from voice content in accordance with at least one embodiment";

b.     "Keywords associated with the user can be used for any appropriate purpose, such as for recommending advertising, product information, or other such content to the user";

c.     "Using any appropriate selection mechanism known or used in the art, an advertising entity can obtain keyword data for the user as extracted in FIG. 4 and use that information to select an ad to display to the user."  (where FIG. 4 indicates that the technology would first "receive voice stream," then "sniff audio stream for trigger word(s)," then "capture adjacent audio" if the trigger word is identified, then

---

[20] This patent is a continuation of U.S. Patent No. 9,679,570 (application filed Aug. 17, 2015), which is a continuation of U.S. Patent No. 9,111,294 (application filed Jul. 30, 2014), which is a continuation of U.S. Patent No. 8,798,995 (application filed Sep. 23, 2011).

"analyze adjacent audio for keyword(s)," then "store keyword data associated with user," then "transmit keyword data to content provider.")

See U.S. Patent No. 10,373,620[21]

35. The "Keyword Determinations from Conversational Data" patent further makes clear that this technology is capable of creating targeted advertisements for non-registered users, such that "[k]eywords associated with the verified user and with the identified *other person* are displayed" and thereby "the voice data can be analyzed for *both people*." *Id.* (emphasis added). For example, "it can be seen that some of the keywords associated with Laura have additional data indicating that these keywords are associated with Laura's kids, and not necessarily with Laura herself." *Id.*

36. On August 2, 2019, Amazon filed a continuation of U.S. Patent No. 10,373,620, which was approved and published by the United States Patent and Trademark Office on June 23, 2020. *See* U.S. Patent No. 10,692,506.

37. U.S. Patent No. 10,692,506 indicates the same or substantially similar language of U.S. Patent No. 10,373,620 (filed June 12, 2017), demonstrating that Amazon has had this technological capability for years and intends to continue to utilize and develop it for purposes of advertising.

---

[21] The Patent indicates that the use of the technology includes Alexa devices: "In this example, a user, can talk into a computing device, which is illustrated as a smart phone in this example. It should be understood, however, that any appropriate electronic device, such as may include a conventional cellular phone, tablet computer, a desktop computer, a personal media player, an e-book reader, or a video game system can be utilized as well within the scope of the various embodiments. In this example, voice content spoken into a microphone or other audio capture element of the computing device is analyzed by one or more processes or algorithms on the computing device to attempt to extract keywords, phrases, or other information that is relevant to the user speaking the content." U.S. Patent No. 10,373,620; U.S. Patent No. 10,692,506.

38. Further, Amazon does not allow a user to stop it from collecting voiceprints. The only way to stop Amazon's collection of voiceprints is to mute the microphone or deactivate the device, both of which completely defeat the functionality of Alexa.

39. Amazon's practice of collecting and storing voiceprints violates the Illinois BIPA 740 ILCS 14/*et seq*., which prohibits the collection, retention, capture, or purchase of biometric identifiers or biometric information without a written release from the individual. BIPA also requires a private entity in possession of biometric identifiers or biometric information to develop a retention schedule and guidelines setting forth the purpose for collecting biometric information and identifying a date upon which the biometric data will be destroyed. 740 ILCS 14/15(a).

40. Amazon violates BIPA multiple ways including, but not limited to:

    a. Amazon generates, collects, stores, and utilizes the voiceprints and transcriptions of its users without receiving executed written releases from the users of Alexa-enabled products.

    b. Amazon does not have a written policy available on its website "establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied, or within 3 years of the individual's last interaction with the private entity, whichever occurs first."[22]

41. Under BIPA, no private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or customer's biometric identifier or biometric information, unless it first:

    (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

---

[22] The policy indicates that Amazon will only delete users' voice recordings once the user makes a request for deletion and the request has been fully processed. Absent any action by the user, a voice recording may be stored in perpetuity by Amazon.

(2)     informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and**

(3)     receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740CS 14/15(b) (emphasis added).

42.     BIPA claims brought under sections 740 ILCS 14/15 (a), (b), and (e) are subject to a five-year statute of limitations period, thus, Plaintiff's claims are not time-barred. *Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563, 2021 Il. App. (1st) 200563, 2021 WL 4243310 (Sept. 17, 2021).

## VI.     FACTS SPECIFIC TO PLAINTIFF ANTHONY ADAMS

43.     Plaintiff Adams owns and operates several Alexa Devices.

44.     Plaintiff has been communicating with Amazon's Alexa since approximately 2010.

45.     After Plaintiff Adams spoke into the Alexa device, Amazon collected, captured, received through trade, or otherwise obtained and disclosed Plaintiff's voiceprint and transcription thereof.

46.     Amazon did not obtain written releases from Plaintiff before capturing, collecting, receiving through trade, or otherwise obtaining her biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(3).

47.     Plaintiff's voiceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

48.     Transcripts of Plaintiff's voice recordings, which are derived from biometric identifiers, are "biometric information" pursuant to 740 ILCS 14/10.

49.     Any other data in Amazon's possession that links Plaintiff's voiceprints to Plaintiff also constitutes "biometric information" pursuant to 740 ILCS 14/10.

50.     As set forth herein, Amazon obtained the biometric identifiers and/or biometric information of Plaintiff and the Class in violation of BIPA.

## VII.    CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of Persons:

> **Class:** All US citizens who live in Illinois and who, from the date five years prior to the date of the filing of this action to the date of the Class's certification of this action, (1) was a registered Amazon Alexa user, and (2) spoke in the vicinity of an Alexa device and was recorded by the Alexa device while living in Illinois.

52.     Excluded from the Class are: (1) Defendants, Defendants' subsidiaries, parents, successors, predecessors, agents, employees, attorneys, insurers, and any entity in which Defendants of their parents have a controlling interest and their current or former employees, officers, and directors; (2) any Judge or Magistrate presiding over this action and any immediate family members; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) Plaintiffs' counsel and Defendants' counsel.

53.     Defendants' conduct violated the statutory privacy rights of thousands, if not millions, of Class members, including Plaintiff, without consent.

54.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a Class action will provide substantial benefits to the parties and the Court.

55.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.  Whether Amazon collected, captured, received, or otherwise obtained Plaintiff and the Class's biometric identifiers;

b.  Whether Amazon properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers;

c.  Whether Amazon obtained a written release (as defined in 740 ILCS 14/10) from Plaintiff and the Class to collect, capture, or otherwise obtain their biometric identifiers;

d.  Whether Amazon has sold, leased, traded, or otherwise profited from Plaintiff's and the Class members' biometric identifiers;

e.  Whether Amazon had and made available to the public, a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers in compliance with the BIPA; and

f.  Whether Defendants' violations of BIPA were committed intentionally, recklessly, or negligently.

56.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class were harmed by Defendants' wrongful conduct in violation of the applicable state statutes. Plaintiff's and the Class members' privacy were invaded by Defendants' uniform wrongful conduct.

57.     Plaintiff will adequately protect the Class's interests.  Plaintiff has retained counsel competent and experienced in complex litigation and Class actions, including litigations to remedy privacy violations.  Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendants have no defenses unique to any Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the

resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the interests of the other members of the Class.

58.     A Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## TOLLING, CONCEALMENT, AND ESTOPPEL

59.     The applicable statutes of limitation have been tolled as a result of Amazon's knowing and active concealment and denial of the facts alleged herein, namely its practice of recording, intercepting, monitoring, and permanently storing individuals' voiceprint without their consent and written release.

60.     Plaintiff and Class Members could not, with due diligence, have discovered the full scope of Amazon's conduct, due in no small part to Amazon's efforts to conceal such conduct. All applicable statutes of limitation also have been tolled by operation of the discovery rule. Under the circumstances, Amazon was under a duty to disclose the nature and significance of their practice of recording, intercepting, monitoring, and permanently storing confidential communications, but did not do so. Defendants are therefore estopped from relying on any statute of limitations.

61.     Amazon's fraudulent concealment and omissions are common to Plaintiffs and all Class members.

62.     Illinois' BIPA provides a private right of action such that any "person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in a federal district court against an offending party." 740 ILCS 14/20.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of 740 ILCS 14/15(b)**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64. The Illinois Legislature instituted BIPA on a finding that the "full ramifications of biometric technology are not fully known" and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5.

65. BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first: (1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier . . . ." 740 ILCS 14/15(b) (emphasis added).

66. Amazon is a Delaware corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

67. Plaintiff and the Class's voiceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

68. Amazon systematically and automatically collected, used, and stored Plaintiff's and the Class's biometric identifiers without first obtaining the specific written release required by 740 ILCS 14/15(b)(3).

69. Amazon did not properly inform Plaintiff or the Class members in writing that their biometric identifiers or biometric information were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or

biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

70.     By collecting, storing, and using Plaintiff's and the Class members' biometric identifiers or biometric information as described herein, Amazon violated Plaintiff's and the Class members' rights to privacy in their biometric identifiers as set forth in BIPA, 740 ILCS 14/1, *et seq*.

71.     On behalf of himself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Amazon to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers or biometric information; (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CLAIM FOR RELIEF
### Violation of 740 ILCS 14/15(a)
### (On Behalf of Plaintiff and the Class)

72.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73.     Section 15(a) of BIPA requires that any "private entity in possession of biometric identifiers . . . must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers . . . when the initial purpose for collecting or obtaining such identifiers . . . has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

74. Amazon does not publicly provide a retention schedule or guidelines for permanently destroying their biometric identifiers or biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

75. Amazon did not adequately disclose to Plaintiff and the Class's members that it would record and store their communications that occurred in the vicinity of Alexa Devices.

76. Accordingly, on behalf of himself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Amazon to establish and make publicly available a policy for the permanent destruction of biometric identifiers complaint with 740 ILCS 14/15(a); (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

<u>**THIRD CLAIM FOR RELIEF**</u>
**Violation of 740 ILCS 14/15(c)**
**(On Behalf of Plaintiff and the Class)**

77. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78. BIPA states that no private entity "in possession of a biometric identifier or biometric information or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

79. Amazon, as revealed through their patents, utilizes voice data to make targeted advertisements and otherwise disclose "keyword data associated with [the] user" – Amazon states that "[t]he identified keywords can be stored and/or transmitted to an appropriate location accessible to entities such as advertisers or content providers who can use the keywords to attempt

19

to select or customize content that is likely relevant to the user." U.S. Patent No. 10,373,620; U.S. Patent No. 10, 692,506.

80. Upon information and belief, Amazon likely sells, leases, trades, or otherwise profits from the voice data and "keyword identifiers" that it makes available to third party "advertisers" or "content providers," which violates 740 ILCS 14/15(c).

81. Accordingly, on behalf of himself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Amazon to establish and make publicly available a policy for the permanent destruction of biometric identifiers complaint with 740 ILCS 14/15(a); (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully request that the Court enter an order:

A. Certifying this case as a Class action on behalf of the Class defined above, appointing Plaintiff as representatives of the Class, and appointing Plaintiff's counsel as the Class counsel;

B. Declaring that Amazon's conduct, as set out above, violates the state statutes cited herein;

C. Ordering Amazon to delete all voiceprints of Class members, and to implement procedures to require consent before recording or storing protected communications;

D. Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre-and post-judgment interest, to the extent allowable;

G. Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H. Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

DATED:  November 2, 2021        Respectfully Submitted,

By: */s/ Michael Smith*
     Michael D. Smith


**LAW OFFICE OF MICHAEL D. SMITH, P.C.**
231 South LaSalle Street
Suite 2100 Chicago, IL 60604
Telephone (312) 546-6138
msmith@smithlawchicago.com
Illinois Bar No. 6210109


**LABATON SUCHAROW LLP**
Michael P. Canty (*pro hac vice* forthcoming)
Carol C. Villegas (*pro hac vice* forthcoming)
Melissa H. Nafash (*pro hac vice* forthcoming)
David Saldamando (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
cvillegas@labaton.com
mnafash@labaton.com
dsaldamando@labaton.com

*Counsel for Plaintiff*